| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | &#124; | |
| Plaintiff, | &#124; | |
| | &#124; | |
| v. | &#124; | 20 CR 631-1 |
| | &#124; | |
| ELIAS QUINONES-FIGUEROA, | &#124; | Judge Virginia Kendall |
| Defendant. | &#124; | |

## DEFENDANT'S SENTENCING MEMORANDUM

The Defendant ELIAS QUINONES-FIGUEROA, by and through his appointed counsel John L. Sullivan, submits this Sentencing Memorandum in support of his request for a sentence below the applicable Sentencing Guidelines range and at or below the Probation Officer's recommendation of a combined 120-month sentence. Defendant, through his counsel, argues as follows:

**Defendant's Version of the Offense**

Defendant Elias has handwritten a Statement which is filed under seal contemporaneously with this Sentencing Memorandum. Defendant asks this Court to consider his Statement along with this Memorandum prior to imposing sentence.

In addition, Defendant anticipates the filing within the next few days of letters of support from family and friends.

**Corrections to the Pre-Sentence Report**

There are no corrections needed to the factual portions of the PSR.

**Overview of Defendant's Conduct**

Times have changed. Years ago, vehicles were stolen for resale, exportation or

1

parting out and were primarily accomplished by 'hot-wiring' the ignition or 'peeling the column'. Now except for the most sophisticated groups, the average teen can't 'hot-wire' a car or 'peel a column' to take it for a 'joy-ride'. Rather, youths who wish to joy-ride find a running car or one with the keys inside; thus, the rise in car-jackings in recent years and the real violent dangers that go along with them. Guns are more readily available to a teen than the knowledge how to steal a classy set of wheels.

That is precisely what happened in this case. Elias and his 16-year-old friend[1], both products of families[2] ravaged by gun violence, both carrying guns in their pockets, were walking around the neighborhood. Elias saw the Chevy Tahoe with its owner nearby and keys available and decided he wanted to drive it[3]. A Tahoe was a big vehicle, recognized in the community and Elias wanted the stature of driving around in one. It was an impulse, the thought of a stupid, young man who around that time was making a number of such decisions (dropped out of school, marijuana, Xanax, not listening to his mother, carrying a gun) (see PSR ¶ 48-49), but none with consequences

---

[1] Upon information and belief, the involved juvenile was subject of ajudication through the Juvenile Division of the Circuit Court of Cook County. If incarcerated at all, it was only for a short period and he is now home living with his family and older than 18 yoa.
[2] Losing a father at a young age to gang and gun violence was a common bond between Elias and his 16-year-old accomplice.
[3] Elias was mad at his mother; she had a Chevy Tahoe, let his brother, her son-in-law and others drive it, but would not let Elias' drive it, in part because Elias did not have a driver's license. Elias took Driver's Education but was kicked out after he was caught with marijuana. So rather than make an adult-like decision - take Driver's Ed a second time, pass it, get his driver's license and then drive his Mother's Tahoe - Elias made an immature decision - use a gun to take a car when you see one he wanted to drive. So there is no confusion, the PSR elsewhere indicates that Elias was working Uber Eats to make money before his arrest. PSR¶ 65. He didn't drive a vehicle to use for Uber Eats; he drove a bicycle.

as dangerous as carjacking and fleeing in a Tahoe from the police.

**Calculation of the Applicable Guidelines' Range**

Calculating the applicable Guideline range is a required first step when determining an appropriate sentence. See *United States v. Garrett*, 528 F.3d 525, 527 (7th Cir. 2008). A mistake in that calculation warrants resentencing. *Id.* (citing *United States v. Hawk*, 520 F.3d 959, 963 (7th Cir. 2006)). As set forth in his Plea Declaration, Defendant Elias Quinones-Figueroa takes issue with a couple points in the Prosecution's and PSR's Offense Level calculation.

There exists tension between the several sections of the Guidelines the PSR and Prosecution seek to apply to the facts surrounding Elias' case. Those sections are:

The Specific Offense Characteristic under the Robbery Guideline, §2B3.1(b)(3)(C), provides for a six-level increase if a victim of a robbery sustains permanent or life-threatening injury. The owner of the Tahoe, the victim[4] of the robbery/carjacking in this case, was not physically injured in this case by Elias or the juvenile.

The Guideline that more closely tracks the facts of this case is §3C1.2 **Reckless Endangerment During Flight** which provides for a two-level increase for any offender who recklessly created a substantial risk of death or serious bodily injury to **another person** in the course of fleeing from law enforcement. Both the PSR (¶26) and prosecutors (Government's Position Paper, pg. 3, Section II) seek to **also** add these two

---

[4] Defendant concedes that Guideline §2B3.1(b)(3)(C) does say **any victim** but as will be argued shortly hereinafter, in order to use the injured bicyclist's injuries as the basis for this six-level enhancement requires the contortion of the context of the "Robbery" Guideline §2B3.1 to include all other crimes committed by the Defendant without consideration of time and space limitations.

3

points to Elias' offense level for a total offense level of 30. In addition to §3C1.2 seeming to be a better fit than §2B3.1(b)(3)(C), applying both enhancements (6 plus 2) appears to be a double counting for the bicyclist's injuries.

The PSR (¶22) seeks to justify use of the six-level increase of §2B3.1 by suggesting that pursuant to concepts of Relevant Conduct and Offense Conduct "Victim B" (the bicyclist) is a victim of the Elias' offense and his relevant of Count One conduct and Victim B (the bicyclist) sustained permanent or life-threatening bodily injury from such relevant conduct. See PSR, § 22[5]. If flight from the police is always part of the Relevant Conduct of an offense such as Robbery under §2B3.1, then §3C1.2 Reckless Endangerment During Flight is an unnecessary, nee superfluous, Guideline enhancement for any offense Guideline that includes an injury-related enhancement.

Moreover, if the Specific Offense Characteristic's 6-level enhancement under §2B3.1(b) (3)(C) applies based upon the injury caused by Defendant crashing into the bicyclist three hours after the carjacking, it is not appropriate to use the same life-threatening injury as it is based upon the same aspect of Defendant's conduct - his reckless driving of the Tahoe while fleeing from police. See *United States v. Dortch*, 628 F.3d 923 (7th Cir. 2010)(holding that multiple enhancements are permissible so long as they relate to different aspects of the defendant's conduct, citing *United States v. White*, 222 F.3d 363, 376 (7th Cir. 2000)).

Thus, Defendant believes that the six-level enhancement for permanent or life-

---

[5] The Prosecution does not adopt in detail the Probation Officer's argument about Relevant Conduct, simply asserting instead that the bicyclist is a Victim of the carjacking. See Government's Position Paper, pg. 3, Section II.

4

threatening injury to a bicyclist should not apply because the bicyclist was **not a victim of the robbery** but rather the bicyclist was "another person" under §3C1.2 injured as the Defendant committed a separate criminal act[6] hours later and geographically removed from the robbery/carjacking itself. As the Seventh Circuit noted in *United States v. Herman*, 844 F.3d 795 (7th Cir. 2019) when speaking of other enhancements under the Robbery Guidelines, "Words should mean something, and in this case, the fact the Guidelines call for physical restraint tells us that not all restraints warrant the two-level enhancement." See also *United States v. Eubanks*, 593 F.3d 645, 654 (7th Cir. 2010)(suggesting some common sense physical space considerations should limit universal application of some enhancements under the Robbery Guideline). Guideline §2B3.1's uses of the term "victim" related to robbery and Guideline §3C1.2's uses "another" person injured in the course of a defendant's reckless flight from capture; both should be given the meanings intended by the Commission. Injury to the bicyclist more clearly fits with the **words** used in §3C1.2 than as a victim of a robbery he wasn't even a witness to, another crime that occurred hours earlier and a distance away.

And, at least, if this Court were to enhance Elias' offense level by six for injury to the bicyclist as a robbery victim, a second the two-level enhancement under §3C1.2 Reckless Endangerment During Flight would constitute double counting that must be removed from the offense level calculation.

---

[6] Even without citation to ILCS, it is obvious that reckless driving, driving without a license, running traffic control devices, hitting a bicyclist causing permanent injury (assault and battery), and fleeing from the police are all separate offenses under Illinois law, although not separately addressed by any federal statutes.

Thus in summary, the Prosecution's and PSR Calculation of the Offense Level is
| | | |
|---|---|---|
| Base | § 2B3.1(a) | 20 |
| Injury to Bicyclist | § 2B3.1(b)(3)(C) | + 6 |
| Carjacking | § 2B3.1(b)(5) | + 2 |
| Fleeing Injury to Bicyclist | § 3C1.2 | + 2 |
| | | 30 |
| Less Acceptance of Responsibility | | - 2 |
| Less Timely Notification | | - 1 |
| | | 27 |

With a Criminal History Category I, results in a Sentencing Range on Count One of 70-87 months.

If §2B3.1(b)(3)(C) is not applicable to injury to the bicyclist who was not a victim of the robbery, the Offense Level Calculation should become
| | | |
|---|---|---|
| Base | § 2B3.1(a) | 20 |
| Robbery Victim Inj | § 2B3.1(b)(3)(C) | + 0 |
| Carjacking | § 2B3.1(b)(5) | + 2 |
| Fleeing Injury to Bicyclist | § 3C1.2 | + 2 |
| | | 24 |
| Less Acceptance of Responsibility | | - 2 |
| Timely Notification | | - 1 |
| | | 21 |

With a Criminal History Category I, results in a Sentencing Range on Count One of 37-46 months.

In the alternative, if this Court determines that §2B3.1(b)(3)(C) should apply to the injury to the bicyclist, then to also enhance the calculation with two more points for injury to the bicyclist while fleeing the police is double counting for the single injury and the calculation becomes
| | | |
|---|---|---|
| Base | § 2B3.1(a) | 20 |
| Injury to Bicyclist | § 2B3.1(b)(3)(C) | + 6 |
| Carjacking | § 2B3.1(b)(5) | + 2 |
| Fleeing Injury to Bicyclist | § 3C1.2 | + 0 |
| | | 28 |
| Less Acceptance of Responsibility | | - 2 |
| Timely Notification | | - 1 |
| | | 25 |

With a Criminal History Category I, results in a Sentencing Range on Count One of 57-71 months.

Consecutive to any sentence recommended by the above calculations is the mandatory seven-year minimum sentence required under Count Two.

**Application of the Calculated Range to the Facts of Elias's Case**

The extensive history of the promulgation and at-first mandatory, but now voluntary, application of the Guidelines to federal sentencings need not be recounted here. Defendant wishes to emphasize a few points-of-view, however. The cited principals are still relevant and helpful in understanding whether the Guidelines should be accepted and their relevance in this case.

Since *United States v. Booker*, 543 U.S. 220, 264, 125 S.Ct. 738, 756-57, 160 L.Ed 2d 621 (2005) the applicable Guideline range has been advice this Court should consider but is not required to follow. Even as advice, the Guidelines may be flawed, as the Supreme Court held in *Nelson v. United States*, 555 U.S. 350, 129 S.Ct. 890, 172 L.E.2d 719 (2009) – stating "The Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable".

But the sentence on Count Two is mandatory and it is the minimum of seven-year consecutive for use of a firearm that Defendant finds most problematic here. Both the Guidelines and the statute require a seven-year mandatory minimum sentence - regardless of the age the offender. Like the Probation Officer noted (PSR Recommendation, pg. 3), the Sentencing Guidelines do not specifically provide for any modification of their calculation based upon age beyond a 'departure' or 'variance'. But 18 USC § 924(c)(1)(A) is more rigid - the mandatory minimum applies in all situations - every offender regardless of age. While not directly applicable, Defendant is reminded of the Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460 (2012) finding that mandatory penalty schemes (there, life-without-parole) that prevent the sentencing

judge from taking into account various central considerations such as juveniles are less culpable, their distinctive and transitory mental states, and environmental vulnerabilities of young offenders. As Justice Kagan noted citing other Supreme Court opinions,

> Of special pertinence here, we insisted in these rulings that a sentencer have the ability to consider the "mitigating qualities of youth." Everything we said in *Roper* and *Graham* about that stage of life also appears in these decisions. As we observed, "youth is more than a chronological fact." It is a time of immaturity, irresponsibility, "impetuousness[,] and recklessness." It is a moment and "condition of life when a person may be most susceptible to influence and to psychological damage." And its "signature qualities" are all "transient." *Eddings* is especially on point. There, a 16-year-old shot a police officer point-blank and killed him. We invalidated his death sentence because the judge did not consider evidence of his neglectful and violent family background (including his mother's drug abuse and his father's physical abuse) and his emotional disturbance. We found that evidence "particularly relevant"—more so than it would have been in the case of an adult offender. We held: "[J]ust as the chronological age of a minor is itself a relevant mitigating factor of great weight, so must the background and mental and emotional development of a youthful defendant be duly considered" in assessing his culpability. (citations omitted).

Defendant Elias Quinones-Figueroa is not asking this Court to find §924's mandatory minimum 7-year consecutive sentence unconstitutional. There is nothing this Court can do about the seven-year mandatory minimum sentence that must be imposed on Count Two consecutive to any sentence imposed on Count One. As noted by the PSR, Elias was beyond the normal age for a youth (he was 19 ½) but displaying a lack of maturity and foresight typically exhibited by adults which is in parallel with a 16-year-old with whom he shared a common bond, engaging in actions of immaturity, irresponsibility, impetuousness and recklessness. PSR Recommendation, pg. 3, ¶1. The

Prosecution itself finds Elias' decision-making on May 27, 2020 "baffling" (Government Position Paper, pg 11, Section b); certainly for a 19 ½ year old it is and was. In accord with the reasoning of *Miller*, Defendant is suggesting this Court moderate its overall sentencing determination, noting that a seven-year sentence is already a heavy sentence to impose on an impetuous young man. Based upon his age, background, upbringing and the community environment in which he was raised, how much longer of a term of imprisonment does he need than seven years? To a 21 ½ year old man (Elias' current age), a sentence of 12 years, as requested by the Government, will equal almost the entire length of his life since his arrival in first grade. A sentence at or below the low end of the revised range of 37-46 months, as recommended by the Defendant *supra.*, and followed by the seven-year mandatory minimum on Count Two is more in line with the PSR's Recommendation (a combined total of 120 months, see pg. 3, ¶2) and should be more than sufficient in Elias' case to meet the purposes of § 3553.

**Application of Section 3553(a) factors**

Considering the nature and circumstances of the offense, this Court must impose a sentence that is sufficient but no greater than necessary to meet the need for a sentence as set forth in §3553(a)(2). With the mandatory minimum on Count Two, Section §3553 requires this Court to calculate a sentence for Count One which when combined with at least seven years consecutive on Count Two results in an overall sentence that is sufficient but no greater than necessary to meet the §3553 factors. The seven-year mandatory minimum on Count Two alone might satisfy most of the "sufficiency" elements of §3553; the question here becomes how much additional time

9

beyond seven years is "no[t] greater than necessary" to meet the §3553 factors.

**The Offense and the Defendant, (a)(1)**

    **Nature and circumstances of the offense**

In objective terms, the nature and circumstances of Elias' actions are disturbing. Elias' actions are in line with his having fallen in with the wrong crowd. He had a firearm and brandished it 'but didn't fire it' to get a Tahoe he wanted to drive. Counsel seriously doubts Elias would have pulled the trigger if the owner hadn't given up the vehicle but too many other youths in Chicago who you would never expect to pull the trigger have done so. Having a firearm was foolish enough but at least Elias never pulled the trigger.

Perhaps the more disturbing aspect was Elias' disregard for public safety as he drove recklessly to flee from the police. Elias set a dangerous series of events in motion, a weighty vehicle traveling 78 miles per hour down a busy City-street on a late afternoon in May 2020. It is a typical scenario replayed on YouTube and other media sites everyday; but while such videos show the resulting crashes, they rarely show any resulting, devastating injuries. Here, Elias was lucky his reckless driving only clipped the wheel of the bicyclist. If he had hit him more directly, the bicyclist would likely be dead.

Defendant has no excuse for his actions. They were certainly the product of his youthful impetuousness. A young man with more maturity is much less likely to use a gun just for the chance to joy-ride in a Tahoe; a young man with more maturity **and driving experience** is much more likely to have pulled to the side, ditched the Tahoe

10

and ran from the police.

**Defendant's history and characteristics**

Defendant's criminal history is clean[7]. What is not clean was his evolution from a juvenile into adulthood. Elias' father died by gang gun violence when he was too young to remember. But there is no question that Elias knew about his father and his death. Elias' mother had been successful for many years keeping Elias away from gang life and the gangs away from Elias. That ended during his junior year in high school. During the same time, his mother couldn't shelter him from the media in this country with its stories of city gangs, gun violence, carjackings, and videos of police chases that pepper YouTube and the TV news. Despite his mother's previous success, Elias thought he knew how to grow into a man and defied his mother. He dropped out of high school, used marijuana and then other drugs, acted out, hung out with a wrong crowd and then unbeknownst to her, acquired a gun. Elias acted not with a thought how such decisions gave him the characters of an adult but foolishly, believing that such actions were the stuff that made one a man. And Elias' decisions that day in May 2020 were parallel to those of his juvenile companion, who also had a gun. And the extreme foolishness of Elias' decisions is demonstrated by his decision to try to flee

---

[7] The bias in the Prosecution's Sentencing Memo is readily demonstrated by their total misreading of the facts recited in ¶43 of the PSR. The Probation Officer reports, based presumably upon Chicago Police reports, that on April 2, 2019, Elias and other youths were in the area of a shooting/attempted carjacking. The Prosecution wrongfully reads the PSR as reporting that **Elias** was caught with a mask in his possession that matched the one worn by the shooter/attempted-carjacker. A close reading of PSR ¶43 indicates that it was not Elias but one other youth found with a mask in his pocket. Contrary to the Prosecution's claim, the police-reported events of that date cast no aspersions upon the background or character of Defendant Elias Quinones-Figueroa.

11

from the police.

By all accounts, prior to that day in 2020, Elias had been a mostly good but not perfect son. That day in May was his breakout day, and he broke out badly. But it was an impetuous and stupid decision, more like the impulse of a misdirected child than a thinking adult. Although 17 months chronologically older than the age society last applies the designation "juvenile", Elias was at best an emerging youth, searching for a path into his "adult" life. Elias decided he wanted to drive a Tahoe and he didn't want to get caught. It was a choice of temporary, not long-term thinking. Elias' poor choice had severe consequences but was not a forever life choice of violence and crime.

**Need for the Sentence, (a)(2)**

    **To reflect the seriousness of the offense**

There can be no question of the seriousness of Elias' offense. Use of a firearm to carjack a joyride is bad enough; driving recklessly without concern for a bicyclist in the road and almost killing him is probably worse. Direct impact from a 78 mile per hour vehicle almost certainly would have caused death, more than a random gunshot. A sentence in excess of the mandatory minimum on Count Two reflects that Elias' actions were a serious breach of societal norms. If the Tahoe owner had actually been shot or the bicyclist killed, a sentence substantially longer than 7, maybe even longer than 14 years, might be in order, perhaps in accordance with society expects from second degree murder under state law[8].

---

[8] An act committed resulting in death committed recklessly but not with intent to kill would likely fall under 720 ILCS 5/9-2(d) as second degree murder with a possible

12

**Promote respect for the law**

Any total sentence in excess of seven years is substantial and should catch the eye of the public and other potential perpetrators.  The State of Illinois has established certain offenses as Class X, assigning them a minimum six-year sentence.  In the Illinois criminal justice system, a Class X sentence draws special attention to the perpetrator and usually is hard to "bargain" down for a less than six year sentence.

Additionally, it should be noted that in the Northern District of Illinois these car-jacking cases are now being prosecuted in the federal Court rather than prosecuted in state court.  Such federal prosecution and mandatory minimum sentencing to seven years, if a gun is involved, certainly has drawn the public's attention and should promote respect for the law even if the sentence is only seven years plus, maybe 9 or 10 years, which is probable here but never the certain outcome in state court.

**Just punishment for the offense**

When personal injury results from an offense, an eye-for-an-eye often creeps into the public psyche.  With the bicyclist suffering permanent physical injury to his leg and spine, this Court cannot imposed similar physical injury on Elias.  The question becomes how can this Court affect Elias' life in a similar fashion?

Defendant Elias was 19 years, 5 months when he committed his offenses; he's 21 ½ years old now.  He has already spent more than two years in custody for his offenses.  Even if his total sentence here is 7 years and a day, he will serve at least a minimum of 71.4 months in custody.  Spending his years from 19 ½ until he is approximately 25 ½

---

sentence of 4 to 15 years or more.

years old is a very substantial portion of his young life. It will consume the formative years when he should learn to live as an adult and make a life for himself. Instead, his formative years will be spent in prison and his development into free adulthood delayed. It doesn't equate to any permanent physical injury but it does put Elias at a disadvantage with other young men, and a violent felony conviction will be another disadvantage[9] that will follow Elias for the rest of his life.

**Adequately deter future criminal conduct by the Defendant, by others**

Defendant's statement, filed contemporaneously with the Sentencing Memo, contains the best expression of what Defendant expects of himself once he gets out of prison. The two years he has already spent in custody have been tough on Elias and his family and constitute a teaching moment. Five or more additional years in prison from today should adequately assure this Court that Elias will be deterred from entering into any further criminal activity once he is released from prison.

**Protect the public from further crimes by the Defendant**

Elias' offenses were motivated by juvenile-like ego and impulses, spur of the moment desires to drive a Tahoe, feel like a big man and like on TV, evade the police once they got on his trail. On May 27, 2020, Elias did not make a career decision to become a life-long criminal; he just did not know another way to be a man and acted on impetuously. While in custody, Defendant is learning to make better life decisions, like he did for many years while growing up. Elias has no intention to enter into a life-of-

---

[9] The disadvantage of a felony conviction at least, which notoriously effects obtaining jobs and other societal privileges and licenses.

crime or commit more offenses, especially if and after he regains his freedom after his 26th birthday.

**Provide the Defendant with necessary education and vocational training**

Defendant Elias defied his mother and did not finish high school. He needs to and now understands the importance of doing so. Additionally, Defendant could use some vocational training so that he can support himself once he is released from custody. Seven years in BOP custody should be sufficient time for Elias to obtain his GED and get the vocational training he needs.

## One Final Element of the Sentencing Calculation

Defendant Elias was arrested by the Chicago Police on the day of the carjacking and remained in custody until his family posted his bond approximately 3 months later on August 20, 2020. Elias entered into federal custody when arrested by federal agents on September 25, 2020 and has remained there since. Elias is unlikely to receive any credit from the BOP for his 87 days spent in the Cook County Jail on the since-dismissed state charges. Defendant asks this Court to thus consider reducing any number of months imposed as a sentence here and give him credit for those 3 months.

## Recommended Conditions for Supervised Release

Defendant Elias and his Counsel have reviewed the conditions of Supervised Release as proposed by the Probation Officer on pages 16 to 21 of the PSR. Defendant believes that each of the conditions as stated are appropriate and based upon the facts of the case and Defendant's background and characteristics.

## CONCLUSION

For all the foregoing reasons, Defendant Elias Quinones-Figueroa asks this Court to impose a sentence of ten years or less as sufficient but not greater than necessary to achieve all the purposes of § 3553.

                                                                                                  Respectfully submitted,

                                                                                                   *s/*    *John L. Sullivan*

2 July 2022                                                                              John L. Sullivan

John L. Sullivan
Appointed Counsel for Defendant
1420 Lehigh Ave #B1
Glenview, IL 60026
sullivanljohn@yahoo.com
312-406-5566

CERTIFICATE OF SERVICE

The undersigned does hereby certify that service of the attached

**DEFENDANT'S SENTENCING MEMORANDUM**

was accomplished pursuant to ECF as to Filing Users and with LR 5.5 as to any party who is not a Filing User or represented by a Filing User.

                                                                               s/    John L. Sullivan

                                                                                    John L. Sullivan

2 July 2022

John L. Sullivan
Appointed Counsel for Defendant
1420 Lehigh Ave #B1
Glenview, IL 60026
sullivanljohn@yahoo.com
312-406-5566