UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | No. 20 CR 631 |
| v. | ) | |
| | ) | Hon. Virginia M. Kendall |
| ELIAS QUINONES-FIGUEROA | ) | District Judge |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM**

Defendant Elias Quinones-Figueroa attempts to persuade this Court that the enhancement for permanent bodily injury does not apply to Victim B, the bicyclist victim, who was hospitalized for several days and is still suffering from the resulting injuries after being hit by defendant who was fleeing from the police after he used a firearm to carjack Victim A.

Defendant argues there was no injury to Victim A (carjacking victim) and that the injury to Victim B (bicycle victim) was not in the course of the carjacking. Specifically, defendant argues Guideline §2B3.1(b)(3)(C)'s six-point enhancement should not apply because the injury to Victim B was not in the course of the carjacking, but rather in the course of fleeing, which defendant argues is a separate offense under state law and is punishable under a separate Guideline, §3C1.2. Defendant does, however, concede that Victim B was a victim of the actions by defendant, but argues Victim B is a victim of a separate criminal felony offense, one under state law, and limits his reading of serious bodily injury in §2B3.1(b)(3)(C) to a victim of the "robbery."

1

Thus, according to defendant, the injuries to Victim B should be counted (if at all) under §3C1.2 as a two-level increase for substantial risk of death or life-threatening injury in the course of fleeing from the police, not during the carjacking.

I. **DEFENDANT'S CONDUCT WARRANTS A SIX-LEVEL INCREASE PURSUANT TO USSG § 2B3.1(B)(3)(C)**

Section 2B3.1(b)(3)(C) reads:

> If any victim sustained bodily injury, increase the offense level according to the seriousness of the injury.

As an initial matter, if the intent of §2B3.1(b)(3) was that the increase was to apply only to the robbery victim, as defendant suggests, the language would not read **ANY** victim and would specify, "the robbery victim." But Courts have interpreted any victim to mean just that, *any* victim. In *U.S. v. Swoape*, 31 F.3d 482 (7th Cir. 1994), the Court found an armed robbery conviction was appropriately enhanced[1] for, among other things, inflicting serious bodily injury **and** recklessly creating a substantial risk of death or serious bodily injury to another person in the course of fleeing from law enforcement. In *Swoape*, after robbing a bank with a firearm the defendant fled in a vehicle with law enforcement pursing behind him. At one point while defendant was fleeing, he stopped his car, got out, fired his weapon at pursuing

---

[1] The Court in *Swoape* also found that the District Court did not engage in double counting when, in sentencing the defendant for robbery, it increased defendant's guidelines offense level by three levels for assaulting person whom he knew to be law enforcement officer (based upon his conduct in shooting three police officers) and by additional two levels for recklessly creating substantial risk of death or serious bodily injury to another in course of fleeing from law enforcement officer (based upon his conduct in recklessly endangering many civilians during high-speed chase). The Seventh Circuit found it appropriate that the district court applied an increase for the high-speed chase and an increase for shooting the police officers-two separate acts.

2

law enforcement, returned to his vehicle and continued to flee. Eventually defendant's vehicle stopped, but before he was apprehended, defendant shot another two law enforcement officers. Defendant was ultimately found guilty of bank robbery and the Seventh Circuit found the increase, pursuant to §2B3.1(b)(3), for inflicting serious bodily injury to the pursuing law enforcement officers, who were not the victims of the bank robbery, was appropriate.

Additionally, Courts outside the Seventh Circuit have specifically found §2B3.1(b)(3)(C) was appropriately applied to a person who was not the "direct" victim. For example, in *U.S. v. Mitchell*, 366.F.3d 376 (5th Cir. 2004), the Court found §2B3.1(b)(3)(C) was appropriately applied when during the course of a bank robbery a customer in the bank suffered a permanently debilitating stroke that was caused by the acts of the bank robbery crime. *See also* (*U.S. v. Muhammad*, 948 F.2d 1449 (6th Cir. 1991), *cert. denied,* 502 U.S. 1119, (1992) (finding "any victim" in §2B3.1(b)(3) was meant to include any employee, bystander, customer, or police officer who gets assaulted during the bank robbery or during an attempted get-away).

Thus, in this case, the injury Victim B received as a result of defendant trying to get away from the police after having carjacked Victim A at gunpoint, necessarily makes him, "any victim."

II. **DEFENDANT'S CONDUCT RECKLESSLY ENDANGERED MULTIPLE LIVES WARRANTING A TWO-LEVEL INCREASE PURSUANT TO USSG § 3C1.2**

Defendant also argues that §2B3.1(b)(3)(C)'s six level increase, because a Victim B sustained permanent or life-threatening injuries, and §3C1.2 two level

increase, for substantial risk of death or serious bodily injury in the course of fleeing from law enforcement officers is double counting.

Under §2B3.1(b)(3)(C), fleeing is not defined. However, §3C1.2, Reckless Endangerment During Flight, Application Note 3 states, "during flight" is to be construed broadly." Other Circuit Courts have addressed the nexus between flight and the charged crime. "[F]or § 3C1.2 to apply, [defendant's] [reckless flight from law enforcement] must have occurred during the course of attempting to avoid detection or responsibility for [his offense of conviction].") (internal quotation marks omitted); *U.S. v. Dial,* 524 F.3d 783 (6th Cir.2008) ("When applying § 3C1.2, the district court must find a nexus between the offense for which the defendant was convicted and the conduct that involved reckless endangerment during flight."); *U.S. v. Southerland,* 405 F.3d 263, 268 (5th Cir.2005) *(*requiring that the government prove "that a sufficient nexus lie between the underlying offense and the reckless flight"); *see also U.S. v. Gray,* 512 Fed.Appx. 803, 808 (10th Cir. 2013) (assuming, without deciding, that a nexus is required); *U.S. v. Duran,* 37 F.3d 557, 559–60 (9th Cir.1994) (same), abrogated on other grounds by *Tapia v. U.S.,* 564 U.S. 319, 131 S.Ct. 2382, 180 L.Ed.2d 357 (2011).

A review of the facts in this case easily shows a nexus between the carjacking and defendant's fleeing when he sees the police. Defendant's course of conduct encompassed several acts. As defendant admitted in his Plea Declaration, after using a firearm to carjack Victim A around 3:23 p.m., later that same day at approximately 6:12 pm, defendant was still driving Victim A's car when he noticed a Chicago Police

vehicle. After noticing the police vehicle, defendant: (1) turned onto Hubbard Street, (2) increased his speed to 78 mph, (3) went through one stop sign without stopping, (4) went through a second stop sign without stopping, (5) went through a red light without stopping, (6) hit Victim B on his bicycle, (7) swerved into oncoming traffic, (8) nearly struck cars waiting in traffic on Hubbard at Ogden, and (9) crashed into a parked vehicle. Further, defendant's conduct on May 27, 2020, created a substantial risk of death or serious bodily injury to many more lives than just Victim B.

The Seventh Circuit has noted that the "course of conduct" qualification in §3C1.2 has meaning. That is, where there are separate aspects of a course of conduct, two enhancements are not double counting. *Swoape*, 31 F.3d at 483 ("Swoape would have received 37 offense levels had he surrendered immediately after shooting the first officer. His further conduct, including another high-speed chase, shooting two more officers, and subjecting bystanders to danger from both reckless driving and shotgun discharges, produced only another two levels. This is not double counting."). Consistent with the Seventh Circuit, other circuits have held that where the same conduct supports the §3C1.2 and §2B3.1 enhancements, that is double counting. *See U.S. v. Clark*, 11 F.4th 491, 497 (6th Cir. 2021).

In this case, defendant's reckless activity endangered several individuals in and near the Ogden intersection. *See e.g. U.S. v. Cainion*, 469 Fed. Appx. 825, 830, 2012 WL 1193518, (11th Cir. 2012)(*unpublished*)(explaining that "although both were imposed as a result of his reckless driving, Cainion's assault of the police vehicle and his reckless driving generally were temporally and spatially distinct from each

5

other. His conduct 'did not occur in a small area of only two or three car lengths' or in a brief expanse of time.") *But see, U.S. v. Roush*, 527 Fed. Appx. 349, 353 (6th Cir. 2013)(*unpublished*)(no double counting when "the PSR reveals that defendant turned his body in order to fire at the Leverings, demonstrating that although the conduct represented a single course of resisting arrest from Moore, the shooting at the Leverings was a separate and distinct act."); *U.S. v. Miner*, 108 F.3d 967, 970 (8th Cir. 1997)(no double counting where defendant rammed a police roadblock and also endangered other citizens during the chase.).

Arguably the injuries defendant caused to Victim B as defendant sped through the stop light at Ogden are covered under §2B3.1(b)(3). However, defendant's other separate aspects of his course of conduct are not counted under §2B3.1(b)(3). Those other aspects of his course of conduct being: (1) speeding at 78 mph in a 30 mph zone on Hubbard Street, (2) driving through the first stop sign without stopping, (3) driving through the second stop sign without stopping, (3) swerving into oncoming traffic, (6) nearly striking cars waiting in traffic on Hubbard at Ogden, and (7) crashing into a parked vehicle.

### III. DEFENDANT'S CONDUCT WARRANTS A SENTENCE WITHIN THE GUIDELINES RANGE

Section 3553(a) requires the court, in imposing sentence, to examine the particular facts of the offense and the nature and characteristics of each defendant, in addition to considering larger goals such as sentencing disparities and deterrence. As the Seventh Circuit has repeatedly held, "sentencing is never abstract: the district court is required by [§ 3553] to tailor its sentence to the particular defendant before

6

it." *United States v. Bridgewater*, 950 F.3d 928, 936 (7th Cir. 2020); *see also Gall v. United States,* 552 U.S. 38, 52 (2007)("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.")(quoting *Koon v. United States,* 518 U.S. 81, 98 (1996). The particular facts of defendant's course of conduct should guide the Court's sentence in this case.

## IV. CONCLUSION

For the reasons set forth above and in the Government's Position Paper Regarding Sentencing Factors, the government respectfully requests that this Court impose a sentence within the Guidelines range of 70 to 87 months' imprisonment to run consecutive to 84 months' imprisonment.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By: *s/Shawn McCarthy*
SHAWN McCARTHY
Assistant United States Attorneys
219 S. Dearborn Street, Suite 500
Chicago, Illinois 60604
(312) 353-5300

7